1  Jerry S. Smith (SBA #19599)
2  JERRY S. SMITH, PLLC
3  145 S. Sixth Avenue
   Tucson, Arizona  85701-2007
4  Phone: (520) 326-0134
5  E-mail: jsmith@jsslawpllc.com
6  Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **David A. Katz**,<br><br>               Plaintiff,<br><br>       v.<br><br>**Pima County Community College District**, a political subdivision of the State of Arizona and a body politic, **Mary Kay Gilliland** and **John Doe Gilliland**, wife and husband, **Louis Albert** and **Jane Doe Albert**, husband and wife; and **Lee Lambert** and **Jane Doe Lambert**, husband and wife,<br><br>               Defendants. | **Case No. 4:14-CV-**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff David A. Katz, by and through Jerry S. Smith, PLLC, his undersigned attorney of record, submits this Complaint for relief against the Defendants for his claims for relief for: <u>Count One</u>: Federal Civil Rights Act

(42 U.S.C. 1983): Retaliation for Exercise of First Amendment Right of Free Speech (Suspension from Teaching Job); <u>Count Two</u>: Federal Civil Rights Act (42 U.S.C. 1983): Fourteenth Amendment Right to Procedural Due Process for Property Right (Suspension without Due Process Hearing in September 2013); <u>Count Three</u>: Federal Civil Rights Act (42 U.S.C. 1983): Seizure and Taking of Private Property in violation of U.S. Constitution Fourth Amendment Search and Seizure rights and Fifth and Fourteenth Amendment rights to compensation for the taking of property (Plaintiff's personal property which the Defendants seized and kept); <u>Count Four</u>: Federal Civil Rights Act (42 U.S.C. 1983): Fourteenth Amendment Right to Procedural Due Process for Property Right (Recession of Approval of Contract for 2014-1015 school year by Board on March 12, 2014 without notice or opportunity to be heard); and <u>Count Five</u>: Federal Civil Rights Act (42 U.S.C. 1983): Retaliation for Exercise of First Amendment Right of Free Speech and Due Process Right to Hearing (Failure to Offer Renewal of Teaching Contract for 2014-2015 School Year).

This Complaint and Demand for Jury Trial is filed pursuant to Federal Rules of Civil Procedure ("FRCP"), Rules 3, 7(a)1, 8(a), and 38(a, b).

## A. The Parties, Jurisdiction and Claims

1. The Plaintiff, David A. Katz ("DAK") is, and has been at all times material to this Complaint:

(A) an adult resident of Pima County, Arizona, and citizen of the United States of America; and

(B) employed as full-time instructional faculty (in Chemistry) by the Pima County Community College District (hereinafter "PCCCD").

2. Defendant PCCCD is, and has been at all times material to this Complaint:

(A) a political subdivision of the State of Arizona and a body politic, established and operating pursuant to A.R.S. Title 15, Chapter 12;

(B) the jural entity which owns, governs and operates the community colleges within Pima County, Arizona, including the Pima Community College West Campus;

(C) the "employer" of DAK; and

(D) acting under color of state law, to-wit A.R.S. Title 15, Chapter 12.

3. Defendant Mary Kay Gilliland was, and had been at all times material to this Complaint:

(A) employed by the PCCCD as its Dean of Science, Technology, Engineering and Math at the West Campus of PCCCD;

(B) acting in her capacity as Dean of Science, Technology, Engineering and Math at the West Campus;

(C) acting under color of state law, to-wit A.R.S. Title 15, Chapter 12; and

(D) acting on behalf of the marital community of her husband "John Doe Gilliland" and herself; his true name is presently unknown to DAK and he will seek leave to amend this Complaint to state his true name pursuant to FRCP Rule 15(a) once it becomes known to him.

4. Defendant Louis Albert is, and has been at all times material to this Complaint:

(A) employed by the PCCCD as the President of its West Campus;

(B) acting in his capacity as President of the West Campus;

(C) acting under color of state law, to-wit A.R.S. Title 15, Chapter 12; and

(D) acting on behalf of the marital community of his wife "Jane Doe Albert" and himself; her true name is presently unknown to DAK and he will seek leave to amend this Complaint to state her true name pursuant to FRCP Rule 15(a) once it becomes known to him.

5. Defendant Lee Lambert is, and has been at all times material to this Complaint:

(A) employed by the PCCCD as its Chancellor and chief executive officer of the PCCCD;

(B) acting in his capacity as Chancellor of the PCCCD;

(C) acting under color of state law, to-wit A.R.S. Title 15, Chapter 12; and

(D) acting on behalf of the marital community of his wife "Jane Doe Lambert" and himself; her true name is presently unknown to DAK and he will seek leave to amend this Complaint to state her true name pursuant to FRCP Rule 15(a) once it becomes known to him.

6. DAK seeks relief herein for his claims against all Defendants for violations of 42 U.S.C. 1983.

7. Based upon the foregoing, the United States District Court for the District of Arizona has jurisdiction over DAK's claims for relief because all claims are based upon and are authorized by a federal statute (42 U.S.C. 1983), pursuant to 28 U.S.C. 1331.

8. All events alleged herein occurred in Pima County, Arizona, and Pima County is the domicile of all Defendants.

9. Based upon the foregoing, the United States District Court for the District of Arizona, Tucson Division, is the appropriate venue pursuant to 28 U.S.C. 1691(b).

## B. Fact Allegations in Support of All Three Counts

10. DAK has been employed full-time by the PCCCD as instructional faculty since August, 2002, as a chemistry instructor.

11. DAK has always performed his job duties for the PCCCD in a very competent, dependable, professional and scholarly manner. Prior to 2013, he had always received excellent annual reviews ("Annual Collegial Conference Reports") from his Deans (supervisors). In addition, DAK has an international reputation for his work in chemistry demonstrations and laboratory safety.

12. In September, 2013, DAK was teaching a full load of chemistry classes at the PCCCD West Campus pursuant to an annual faculty employment contract, and additional classes pursuant to a supplemental "overload" contract, executed on June 27, 2013. A true copy of this contract is attached as Exhibit #1 infra, and incorporated herein by reference pursuant to FRCP Rule 10(c).

13. Such contract (Exhibit #1) was offered to DAK pursuant to both (A) the established custom and practice of PCCCD to offer contract renewals each year to all instructional faculty unless PCCCD would not have a need for such faculty because of a reduction in enrollment or class

demand, which custom and practice created a reasonable expectancy of continued employment from year to year for instructional faculty such as DAK, and (B) the PCCCD Faculty Personnel Policy Statement, section E (first paragraph, at pg. 30) which states:

> "A Faculty member shall be offered a new contract for the ensuing academic or fiscal year unless he/she receives notice otherwise on or before March 1."

A true copy of that Policy is attached as Exhibit #2 infra, and incorporated herein by reference pursuant to FRCP Rule 10(c).

14. All PCCCD instructional faculty had certain rights established by the PCCCD which DAK reasonably relied upon, set forth in the PCCCD Personnel Policy Statement for College Employees. The pertinent portions of this Policy Statement are attached as Exhibit #3 infra, and incorporated herein by reference pursuant to FRCP Rule 10(c).

15. In 2013, DAK observed certain deficiencies regarding the West Campus Laboratory for chemistry instructors and students which affected the quality of the instruction and the poor condition and lack of maintenance for certain laboratory equipment, and he notified his superior, Dean Gilliland, and copied other PCCCD officials, including President Albert. Dean Gilliland seemed unconcerned and disinterested in the Laboratory problems raised by DAK, so he followed up with an e-mail to her on July 30, 2013. This e-mail is attached as Exhibit #4 infra, and incorporated herein by reference pursuant to FRCP Rule 10(c).

16. This e-mail (Exhibit #4) was sent by DAK as a concerned citizen who was trying to get the PCCCD to take remedial action to correct the deficiencies in its Laboratory which were matters of public concern affecting the quality of the education provided by the PCCCD, and DAK's official duties at PCCCD did not including calling to the attention of his superiors or the public such Laboratory deficiencies.

17. PCCCD expressly guaranteed that its faculty would have complete academic freedom and could speak or write as a citizen and exercise their right to free speech without any discipline.  Exhibit #2 supra, pg. 31, Academic Freedom, secs. 1 and 3.

18. PCCCD reacted with hostility to DAK's concerns (Exhibit #4 infra) and just one and a half months later, DAK was given a "Notice of Investigatory Leave of Absence" on September 16, 2013, by Dean Gilliland which suspended him with pay effective immediately.  This Notice is attached as Exhibit #5 infra, and incorporated herein by reference pursuant to FRCP Rule 10(c).

19. The Notice (Exhibit #5 infra) contained vague, non-specific and conclusory allegations of minor charges, which were not true.

20. When DAK was suspended supra, Defendants PCCCD and Dean Gilliland and President Albert ordered him not to return to the West Campus without express permission.  DAK asked permission to return so he could remove and take from the premises certain personal property that he maintained there for use in his teaching and laboratory work.  Based on this request, DAK was allowed one return visit on October 19, 2013 during

which he was able to retrieve most of his personal property. However, certain personal property was flatly denied him by PCCCD.

21. Through further communication with PCCCD, DAK obtained additional personal property, however, the personal property belonging to DAK that has still been denied to him by PCCCD, was and is:

(A) a bottle of uranyl acetate dihydrate;

(B) a bottle of uranyl nitrate hexahydrate;

(C) a radium spot source (a spot of radium paint on a small rubber bumper); and

(D) a bottle of blue no. 1 food color (also known as "Brilliant Blue FCF").

22. When the PCCCD kept DAK's personal property and refused to let him retrieve it or to gather it up and give it to him, it deliberately violated his Fourth Amendment Search and Seizure rights and his Fifth and Fourteenth Amendment right (the "Takings Clause") to compensation for any taking of property from a citizen by the government or its agents.

23. On October 4, 2013, President Albert sent DAK a "Notice of Intent to Suspend Without Pay and Intent to Terminate". This Notice is attached as Exhibit #6 infra, and incorporated herein by reference pursuant to FRCP Rule 10(c).

24. As a result of this Notice (Exhibit #6), DAK's suspension from his job was without pay, and he received no pay, with his last paycheck being given on October 25, 2013, and he was not paid again until January 3, 2014.

25. On October 10, 2013, President Albert gave DAK a "Notice of Decision to Recommend Termination of Employment". This Notice is attached as Exhibit #7 infra, and incorporated herein by reference pursuant to FRCP Rule 10(c).

26. DAK denied the allegations against him and wanted to know the details of the charges, and requested a due process evidentiary hearing, but was told that the PCCCD was still investigating the charges against him, and continued to deny him pay while suspended.

27. Finally, DAK and his representative had a meeting with Chancellor Lambert and counsel for the PCCCD on December 17, 2013 to discuss the status of the PCCCD "investigation" and DAK's demands for reinstatement and back pay. However, nothing was resolved at this meeting (or since).

28. On December 19, 2013, Chancellor Lambert sent DAK a memo stating that (A) no final decision would be made regarding DAK's status at that time, (B) DAK would be transferred from unpaid leave to paid leave effective December 18, 2013, and (3) PCCCD was proceeding against DAK pursuant to its Personnel Policy, Exhibit #3 infra. By proceeding directly to termination, the PCCCD was effectively bypassing any attempt at resolution and/or corrective action pursuant to Sections G and J of the Policy, Exhibit #3, pgs. 45 & 47. This memo from Chancellor Lambert is attached as Exhibit #8 infra, and incorporated herein by reference pursuant to FRCP Rule 10(c).

29. At its regular Board meeting on February 5, 2014, the PCCCD Board, acting upon the recommendation of Chancellor Lambert, approved

extending/offering a contract renewal for DAK for the 2014-2015 school year, as action Item 16.5 on its meeting agenda.

30. Unbeknownst to DAK at the time, on March 12, 2014, the PCCCD Board of Governors, acting upon the recommendation of Chancellor Lambert, rescinded or cancelled its prior action on February 5, 2014 approving a contract renewal for DAK for the 2014-2015 school year, as action Item 17.1 on its meeting agenda.

31. With respect to the Board action on March 12, 2014 cancelling his contract renewal supra, none of the Defendants nor anyone else gave DAK notice that the Board would consider cancelling or rescinding his contract renewal after it had been approved on February 5, 2014, and DAK did not learn of the March 12, 2014 action cancelling his renewal until months later.

32. Although DAK was entitled to a renewal contract for the current school year of 2014-2015 and was not told he would not be offered a renewal by March 1, 2014, paragraphs 13 and 14 supra, the Defendants have failed and refused to offer DAK a contract renewal which has left him effectively unemployed since the end of the 2013-2014 school year (Exhibit # 1 infra).

33. On July 1, 2014, DAK and his representative met with Chancellor Lambert (and counsel for the PCCCD) to discuss DAK's status and his requests for a contract renewal and compensation, and provide a copy of DAK's recent professional activities (Exhibit #10 attached infra) in support of his request.

34. At the July 1, 2014 meeting supra, Chancellor Lambert said that he wanted to offer a contract renewal to DAK for the 2014-2105 school year

and would be requesting Board approval for the contract renewal at a Board meeting later that month (July 30, 2014).

35. Chancellor Lambert did not keep his promise, paragraph 34 supra, and did not seek or obtain such Board approval, nor did he offer a contract renewal to DAK.

36. Chancellor Lambert did not follow up with DAK after his July 1, 2014 conference with DAK until August 20, 2014 when he offered DAK a "Return to Work Agreement", not a contract renewal, in which DAK would have had to waive his legal rights against the Defendants and agree to 27 separate unnecessary and onerous and offensive work conditions and restrictions not imposed upon other instructional faculty, which DAK has refused to sign.

37. To date, the Defendants have never provided DAK with any notice of charges with specifics or evidentiary hearing as required by both the due process clause of the Fourteenth Amendment of the U.S. Constitution and PCCCD's own Policy (Exhibit #3 infra) despite the facts that he (A) was suspended without pay, (B) had his professional reputation damaged, and (C) was not offered a renewal of his contract for the current (2014-2015) school year (although he was eventually offered an unsatisfactory "return to work agreement" with 27 unnecessary and onerous and offensive conditions and restrictions) despite the fact that he was entitled to a contract renewal, paragraphs 13 and 14 supra.

38. As the direct and proximate result of the Defendants' retaliatory conduct in response to DAK's e-mail on matters of public concern, which was free speech protected by the federal constitution, Exhibit #4 infra, and

the violation of DAK's federal constitutional right to procedural due process by the Defendants, DAK has suffered damages including lost income and a reduced standard of living, loss of valued interaction with his co-workers and students, harm to his personal and professional reputation, emotional distress, loss of sleep, and worry about his future employment and ability to support himself and his family.

39. Prior to his unjustified suspension and non-renewal by the Defendants, DAK has enjoyed an outstanding professional reputation for scholarship and teaching chemistry at the college level. See his curriculum vitae which is attached as Exhibit #9 infra, and incorporated herein by reference pursuant to FRCP Rule 10(c).

40. DAK has continued to be active in his professional field and tried to maintain his professional reputation and skills despite the conduct of the Defendants alleged herein. See his Recent Activities List which is attached as Exhibit #10 infra, and incorporated herein by reference pursuant to FRCP Rule 10(c).

41. On April 6, 2013, the PCCCD was placed on probation by the national community college accreditation agency, the Higher Learning Commission (a commission of the North Central Association). The probation order states, inter alia:

A. "Pima Community College ("the College") is out of compliance with Criterion Two, Core Component 2.A, "the institution operates with integrity in its financial, academic, personnel, and auxiliary functions; it establishes and follows fair ethical policies and processes for its governing board, administration, faculty, and staff," for the following reasons:
The College has also not operated with integrity in its handling of personnel policies and procedures and implementation of those policies and procedures."

B.  ". . . the College's Board of Governors had not routinely revised and updated its own policies and procedures and lacked a robust committee structure to provide oversight of human resources or other functional areas of the College. . . . . The fact-finding team noted a culture of fear and retribution that pervaded the administration of the College.

C.  "The College is out of conformity with Assumed Practice A.4, "The institution provides clear information regarding its procedures for receiving complaints and grievances from students and other constituencies, responds to them in a timely manner, and analyzes them to improve its processes"."

42.  DAK is entitled to punitive damages because the conduct of specified individual Defendants described herein was done with a willful intent to violate DAK's federal constitutional rights to free speech and due process, and to punish him for exposing and disclosing the poor condition of the Laboratory at the West Campus.

## C. Demand for Jury Trial

Plaintiff DAK demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution, and FRCP Rule 38(a, b).

## D. Relief Requested

Based upon the foregoing, Plaintiff DAK requests judgment and orders granting him the following relief against the each of the Defendants:

<u>Count One: Federal Civil Rights Act (42 U.S.C. 1983):
Retaliation for Exercise of First Amendment Right of Free Speech
(Suspension from Teaching Job)</u>

1. Compensatory damages, including, inter alia, lost past and future income damages, emotional distress damages, and other general tort damages.

2. Punitive damages against Defendants Albert and Lambert.

3. Injunctive relief, including, inter alia, reinstatement with full back pay and all lost benefits, and a teaching contract for the current school year (except for Defendant Gilliland).

4. His reasonable attorneys fees and expert fees incurred herein, pursuant to 42 U.S.C. 1988 (b)(c), FRCP Rule 54(d)2, and LRCiv Rule 54.2.

5. His taxable costs incurred herein, pursuant to FRCP Rule 54(d)1, LRCiv Rule 54.1, and 28 U.S.C. 1920.

<u>Count Two: Federal Civil Rights Act (42 U.S.C. 1983):</u>
<u>Fourteenth Amendment Right to Procedural Due Process for Property Right</u>
<u>(Suspension without Due Process Hearing in September 2013)</u>

1. Compensatory damages, including, inter alia, lost income damages, emotional distress damages, and other general tort damages.

2. Punitive damages against Defendant Gilliland.

3. Injunctive relief, including, inter alia, reinstatement with full back pay and all lost benefits, and a teaching contract for the current school year (except for Defendant Gilliland).

4. His reasonable attorneys fees and expert fees incurred herein, pursuant to 42 U.S.C. 1988 (b)(c), FRCP Rule 54(d)2, and LRCiv Rule 54.2.

5. His taxable costs incurred herein, pursuant to FRCP Rule 54(d)1, LRCiv Rule 54.1, and 28 U.S.C. 1920.

<u>Count Three: Federal Civil Rights Act (42 U.S.C. 1983):
Seizure and Taking of Private Property in violation of U.S. Constitution Fourth Amendment Search and Seizure rights and Fifth and Fourteenth Amendment rights to compensation for the taking of property</u>
(DAK's personal property which the Defendants seized and kept)

1. Compensatory damages and other general tort damages.

2. Injunctive relief, including, inter alia, the return of DAK's personal property wrongfully withheld (except for Defendant Gilliland).

3. His reasonable attorneys fees and expert fees incurred herein, pursuant to 42 U.S.C. 1988 (b)(c), FRCP Rule 54(d)2, and LRCiv Rule 54.2.

4. His taxable costs incurred herein, pursuant to FRCP Rule 54(d)1, LRCiv Rule 54.1, and 28 U.S.C. 1920.

<u>Count Four: Federal Civil Rights Act (42 U.S.C. 1983):
Fourteenth Amendment Right to Procedural Due Process for Property Right</u>
(Rescission of Approval of Contract for 2014-1015 school year by Board on March 12, 2014 without notice or opportunity to be heard)

1. Compensatory damages, including, inter alia, lost past and future income damages, emotional distress damages, and other general tort damages.

2. Punitive damages against Defendant Lambert.

3. Injunctive relief, including, inter alia, reinstatement with full back pay and all lost benefits, and a teaching contract for the current school year (except for Defendant Gilliland).

4. His reasonable attorneys fees and expert fees incurred herein, pursuant to 42 U.S.C. 1988 (b)(c), FRCP Rule 54(d)2, and LRCiv Rule 54.2.

5. His taxable costs incurred herein, pursuant to FRCP Rule 54(d)1, LRCiv Rule 54.1, and 28 U.S.C. 1920.

<u>Count Five: Federal Civil Rights Act (42 U.S.C. 1983):
Retaliation for Exercise of First Amendment Right of Free Speech and
Violation of Due Process Right to Hearing
(Failure to Offer Renewal of Teaching Contract
for 2014-2015 School Year)</u>

1. Compensatory damages, including, inter alia, lost past and future income damages, emotional distress damages, and other general tort damages.

2. Punitive damages against the individual Defendants.

3. Injunctive relief, including, inter alia, reinstatement with full back pay and all lost benefits, and a teaching contract for the current school year (except for Defendant Gilliland).

4. His reasonable attorneys fees and expert fees incurred herein, pursuant to 42 U.S.C. 1988 (b)(c), FRCP Rule 54(d)2, and LRCiv Rule 54.2.

5. His taxable costs incurred herein, pursuant to FRCP Rule 54(d)1, LRCiv Rule 54.1, and 28 U.S.C. 1920.

Respectfully submitted this 3rd day of December, 2014.

                                       s/Jerry S. Smith
                                       Jerry S. Smith, Attorney for Plaintiff
                                       Jerry S. Smith, PLLC

### **E. Attached Exhibits**

1. PCCCD-DAK contract for FY 2013-2104 including overload (cover page dated 6-27-13) (three pages)

2. PCCCD Faculty Personnel Policy Statement, pages 30-31

3. PCCCD Personnel Policy Statement for College Employees, pages 13 and 43-55

4. E-mail from DAK to Mary Kay Gilliland dated 7-30-13 (one page)

5. Memo from Mary Kay Gilliland to DAK dated 9-16-13 (one page)

6. Memo from Louis Albert to DAK dated 10-4-13 (one page)

7. Memo from Louis Albert to DAK dated 10-10-13 (two pages)

8. Memo from Lee Lambert to DAK dated 12-19-13 (one page)

9. DAK Curriculum Vitae (26 pages)

10. DAK Recent Activities (four pages)